UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SANDRA KING                                                              CIVIL ACTION

VERSUS

OUR LADY OF THE LAKE                                          17-530-SDD-EWD
HOSPITAL, INC.

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendant, Our Lady of the Lake Hospital, Inc. ("OLOL"). Plaintiff, Sandra King ("Plaintiff") has filed an *Opposition*[2] to this motion, to which OLOL filed a *Reply*.[3] Plaintiff also filed a *Supplemental Memorandum*[4] regarding a recent Fifth Circuit decision relevant to this matter. For the following reasons, OLOL's motion will be granted in part and denied in part.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**[5]

Plaintiff is a deaf individual that communicates primarily in American Sign Language ("ASL").[6] Plaintiff is not proficient in English and requires a sign language

---

[1] Rec. Doc. No. 42.
[2] Rec. Doc. No. 56.
[3] Rec. Doc. No. 59.
[4] Rec. Doc. No. 71.
[5] OLOL claims it denies the truthfulness of the factual allegations in Plaintiff's *Complaint*, Rec. Doc. No. 42-1, p. 14, but it relies exclusively on the *Complaint* for its factual background. Further, OLOL's *Statement of Undisputed Material Facts* does not offer evidence of facts that controvert Plaintiff's allegations. Thus, the Court accepts Plaintiff's factual allegations as facts deemed admitted for purposes of this motion.
[6] Rec. Doc. No. 1, ¶ 1.

Document Number: 59895

interpreter to be able to understand complex medical concepts.[7] Plaintiff filed this lawsuit alleging OLOL's failure to provide necessary communication accommodations over the course of three hospitalizations at OLOL in March and April of 2017. Initially, Plaintiff's *Complaint* alleged violations of Title III of the Americans with Disabilities Act ("ADA"),[8] Section 504 of the Rehabilitation Act of 1973 ("RA"),[9] Section 1557 of the Patient Protection and Affordable Care Act ("ACA"),[10] and the Louisiana Commission on Human Rights ("LCHR").[11] OLOL moved to dismiss Plaintiff's claims under the LHRA, which the Court granted on June 5, 2018.[12] Plaintiff voluntarily dismissed her claims under the ADA on October 14, 2019.[13]

## Plaintiff's Allegations

In March 2017, Plaintiff received medical services at OLOL relating to her heart surgery and post-surgery care and education.[14] Plaintiff claims that, during her five-day admission, she was only provided with an interpreter for her pre-operative meeting with the surgeon, Dr. Bringaze, and at the time of her discharge.[15] Rather than communicating with Plaintiff using an ASL interpreter, Plaintiff was forced to read lips and pass notes with OLOL medical staff.[16] Plaintiff returned to OLOL a day after her discharge because her heart was racing.[17] Despite Plaintiff's pleas for an ASL interpreter, OLOL only provided

---

[7] Rec. Doc. No. 56-2, Plaintiff's Affidavit, ¶ 4.
[8] 42 U.S.C. § 12181.
[9] 29 U.S.C. § 794.
[10] 42 USC § 18116.
[11] La. R.S. § 51:2231 *et. seq.*
[12] Rec. Doc. No. 23.
[13] Rec. Doc. No. 48.
[14] Rec. Doc. No. 1, ¶ 11.
[15] *Id.* at ¶¶ 12-13.
[16] *Id.* at ¶ 15.
[17] *Id.* at ¶ 16.
Document Number: 59895

an interpreter once a day during her three-day stay, forcing Plaintiff to attempt communication with her medical providers through lip reading and note passing.[18] Plaintiff returned to OLOL several days after her discharge for the second hospital stay because she was having difficulty breathing.[19] Plaintiff was provided with Video Remote Interpreting ("VRI") during triage but was again denied consistent interpretive services during her third hospital stay.[20] Plaintiff claims that, without consistent access to effective auxiliary communication aids, she was frustrated confused, anxious, isolated, and afraid.[21] Therefore, Plaintiff claims she was also not afforded an equal opportunity to participate in her healthcare.

Plaintiff filed suit seeking damages for emotional injuries, and she seeks an injunction against OLOL, requiring it to implement certain policies and procedures for treating deaf patients. The only claims that remain before the Court are Plaintiff's claims under the RA and the ACA. OLOL now moves for summary judgment on Plaintiff's claims for compensatory damages, arguing that such damages are unavailable under the ACA and RA.[22] Plaintiff originally opposed the motion, but now acknowledges that these damages are unavailable pursuant to a recent Fifth Circuit decision. Plaintiff nevertheless contends she is entitled to nominal damages such that summary judgment remains improper. OLOL also moves for summary judgment on Plaintiff's claim for injunctive relief.

---

[18] *Id.* at ¶ 18.
[19] *Id.* at ¶ 19.
[20] *Id.* at ¶ 20.
[21] *Id.* at ¶ 21.
[22] Based on this contention, OLOL also moves for summary judgment on Plaintiff's request for attorney's fees.

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.[24]  A court must deny the motion for summary judgment if the movant fails to meet this burden.[25]

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[26] This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim.[27] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[28]

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.[29] The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[30]  Under this standard, a genuine issue of material fact exists if a reasonable

---

[23] Fed. R. Civ. P. 56.
[24] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
[25] *Id.*
[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted).
[27] *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).
[28] *Anderson,* 477 U.S. at 249 (citations omitted).
[29] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[30] *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

Document Number: 59895

trier of fact could render a verdict for the nonmoving party.[31]

### B.     Compensatory Damages under the ACA and RA

In *Jane Cummings v. Premier Rehab Keller, P.L.L.C.*,[32] nearly identical claims were asserted by the plaintiff against the defendant as those asserted in the instant matter.  The deaf and legally blind plaintiff-patient alleged that her physical therapy provider violated the ADA and RA by failing to provide an ASL interpreter during treatment.  The Fifth Circuit held that emotional distress damages were not available under these statutes.[33]

Although Plaintiff herein disagrees with the Fifth Circuit's reasoning in *Cummings*, Plaintiff acknowledges that this Court "is duty-bound to dismiss her claims for emotional distress."[34]  Nevertheless, Plaintiff maintains that she may still seek nominal damages in this matter, having specifically pled such damages in her *Complaint*.  Plaintiff relies on language by the Fifth Circuit in *Cummings* demonstrating that, in evaluating what sort of damages are available in an RA/ACA case, the Fifth Circuit will look to the Restatement (Second) of Contracts.  Thus, Plaintiff argues:

> It is well established under contract law that, where a contract has been breached, nominal damages should be awarded even where actual damages cannot be established. Starting with Louisiana contract law, "[t]here is a principle of law that where a contract has been breached, though not in bad faith, and no actual damages are proved, nominal damages may be allowed for the technical injury." *Green v. Farmers' Consolidated Dairy Co.*, 113 La. 869, 37 So. 858. The Restatement of Contracts also explains that, where a breach of contract is proven but it caused no otherwise-compensatable loss, an award of nominal damages will be awarded. *See* Restatement (Second) of Contracts § 346(2) ("If the breach caused no loss or if the amount of the loss is not proved under the

---

[31] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).
[32] 948 F.3d 673 (5th Cir. 2020).
[33] *Id.*
[34] Rec. Doc. No. 71, p. 2.

rules stated in this Chapter, a small sum fixed without regard to the amount of loss will be awarded as nominal damages.").[35]

Plaintiff also contends that nominal damages are still available if she carries her burden of proving a technical violation of the law. Plaintiff did, indeed, plead for nominal damages in her *Complaint*.[36] Therefore, while Plaintiff is foreclosed from recovering compensatory damages for emotional distress-type damages, Plaintiff may recover nominal damages if she carries her burden at trial of demonstrating discrimination on the part of OLOL.

### C.    Expert Testimony Not Required to Prove Discrimination

OLOL insists that Plaintiff is essentially claiming that she was provided substandard medical care and, as such, expert medical testimony is required to prove causation. Thus, OLOL contends, having no medical expert, Plaintiff cannot carry her burden of proof at trial, and OLOL is entitled to summary judgment on any claim for damages.

Plaintiff maintains that her claim is not one of substandard medical care, sounding in medical malpractice; rather, Plaintiff claims discrimination based on her disability. Plaintiff contends the proper inquiry in this matter is whether she, a disabled individual, received an equal opportunity to participate in her healthcare as compared to non-disabled patients. Accordingly, Plaintiff argues that the question is not one of substandard medical care but whether she was able to participate in the "expansive information exchange" that non-deaf patients are able to engage in at OLOL.[37] The Court agrees.

---

[35] *Id.* at p. 3.
[36] Rec. Doc. No. 1, ¶ 4; *see also*, p. 16 (Prayer for Relief, (D)(i)).
[37] Rec. Doc. No. 56, p. 10 (quoting *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017)).

Plaintiff relies heavily on the decision of the Eleventh Circuit in *Silva v. Baptist Health S. Fla., Inc.*, wherein hearing-impaired patients sued a hospital, asserting claims for discrimination under the ADA and RA based on the hospital's failure to offer appropriate auxiliary aids so patients could effectively communicate with hospital staff.[38] The Eleventh Circuit held in *Silva* that the ADA and the RA both focus on the equal opportunity to participate in, or benefit from, the defendant's goods and services.[39]  The court stated:  "It is not dispositive that the patient got the same ultimate treatment that would have been obtained even if the patient were not deaf," because – "regardless of whether a patient ultimately receives the correct diagnosis or medically acceptable treatment," a patient has still "been denied the equal opportunity to participate in healthcare services whenever he or she cannot communicate medically relevant information effectively with medical staff."[40] Reversing the district court's grant of summary judgment for the defendant, the court concluded that, whether the requested auxiliary aids for a hearing-impaired plaintiff were necessary, was an "inherently fact-intensive" inquiry.[41]

The *Silva* court noted, however, "[n]onetheless, this does not mean that every request for an auxiliary aid that is not granted precludes summary judgment or creates liability."[42]  Acknowledging this principle, the court proceeded "to evaluate the record evidence pertaining to whether there are disputed issues of material fact regarding

---

[38] 856 F.3d 824 (11th Cir. 2017).
[39] *Id.* at 834.
[40] *Id.* at 834 (citing 45 C.F.R. § 84.4(b)(2)); *see also, Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1338 (N.D. Cal. 1994) (adequate medical treatment is not a defense to a claim that defendant failed to provide effective communication under the RA)).
[41] *Id.* at 836 (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012)).
[42] *Id.* (quoting *Liese*, 701 F.3d at 342).

Plaintiffs' claimed impairments in their ability to exchange medically relevant information with Defendants' hospital staff."[43] The court concluded that the plaintiffs had presented sufficient evidence to create a fact issue on whether they were denied the auxiliary aids "necessary to ensure that a deaf patient was not impaired in exchanging medically relevant information with hospital staff," with a "level of communication ... that is substantially equal to that afforded to non-disabled patients."[44]

While the *Silva* decision is not binding on this Court, the Court agrees with the reasoning and analysis set forth therein.  Further, OLOL has not challenged or controverted any of the factual allegations set forth in Plaintiff's *Complaint* or *Affidavit* with its own summary judgment evidence.  Rather, OLOL's primary argument for summary judgment on Plaintiff's discrimination claims is a legal one - that she has only alleged a claim for substandard medical treatment, which requires expert medical testimony.  While it is true that Plaintiff did make these allegations in her *Complaint*, she also clearly alleged discrimination on the basis of her disability, and Plaintiff concedes in her *Opposition* that her claim is for discrimination in failing to accommodate her disability and not substandard medical treatment.[45]  Accordingly, OLOL's motion is denied as to Plaintiff's claim for nominal damages for alleged disability discrimination as there are genuinely disputed material facts regarding whether such discrimination occurred.

**D.     Entitlement to Injunctive Relief**

Plaintiff has also moved for injunctive relief, requesting that the Court order OLOL to implement various relief measures, including, *inter alia*, developing and implementing

---

[43] *Id.*
[44] *Id.* at 831, 835.
[45] Rec. Doc. No. 56, pp. 10-11.

policies prohibiting future discrimination against deaf individuals, prohibiting the denial to deaf individuals their right to effective communication; requiring OLOL to provide ASL interpreters when requested; and posting proper notices of deaf patients' rights.[46] OLOL moves for summary judgment on Plaintiff's claim for injunctive relief, arguing both that she lacks standing to bring such a claim and that the relief requested is overly broad.

To establish Article III standing, a plaintiff must show: (1) an injury in fact that is concrete, particularized, and imminent, and is not conjectural or hypothetical; (2) a causal connection demonstrating that the injury is fairly traceable to the defendant's challenged actions; and (3) that it is likely—not simply speculative—that a favorable decision will redress the injury.[47] The Fifth Circuit has explained that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the alleged barrier] actually affects his activities in some concrete way."[48]

The ADA[49] alters the traditional standing analysis by explicitly relieving an individual of the obligation to engage in a "futile gesture" where the individual has "actual notice" that the defendant does not intend to comply with the ADA.[50] A plaintiff seeking injunctive relief under Title III is not required to demonstrate intentional discrimination.[51]

---

[46] Rec. Doc. No. 1, pp. 15-16.
[47] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and quotation marks omitted).
[48] *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011).
[49] The Court notes that reliance on cases brought under the ADA is proper as such cases are relevant and applicable in RA cases. *Arce v. Louisiana*, 226 F.Supp.3d 643, 649 (E.D. La. 2016)("'The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts.' *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the RA. *Id.* Thus, '[j]urisprudence interpreting either section is applicable to both,' *Delano–Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002), and courts typically treat plaintiffs' ADA and RA claims coextensively and analyze them together as though they were a single claim.").
[50] *See* 42 U.S.C. § 12188(a)(1) and 28 C.F.R. § 36.501(a).
[51] *See Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183-84 (5th Cir. 2015) (applying an intentional discrimination standard to the issue of compensatory damages under Section 504, but omitting the intentional discrimination analysis when considering the issue of injunctive relief under Title III).

In *Smith v. Ochsner Medical Center-Westbank, LLC*,[52] the district court for the Eastern District of Louisiana addressed a case brought by a deaf individual who visited Ochsner for prenatal care on approximately fifteen occasions between November 17, 2016 and June 14, 2017. The plaintiff alleged that she received an in-person sign language interpreter during approximately five visits, and she received a video remote interpreter during approximately five visits. Further, after it was demanded by the plaintiff's attorney, Ochsner also provided a sign language interpreter during the delivery of the plaintiff's child. An Ochsner nurse subsequently scheduled an appointment with third-party provider but failed to inform that provider of the plaintiff's disability. The plaintiff sued Ochsner for damages and injunctive relief. Ochsner moved to dismiss the plaintiff's claim for injunctive relief, arguing she lacked standing. The court noted:

> "The Fifth Circuit has not expressly considered the proper approach to determining standing in the typical Title III case." *Betancourt v. Ingram Park Mall, L.P.*, 735 F. Supp. 2d 587, 600 (W.D. Tex. 2010). The Ninth Circuit's "deterrent effect doctrine" based on the provision in Title III guaranteeing "equality of opportunity" for disabled individuals becomes relevant when an individual suffers "continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1098 (9th Cir. 2017) (internal citations omitted). According to this doctrine that has been utilized by district courts within the Fifth Circuit, an individual who is denied "the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation," whether directly or because she is deterred from revisiting due to ADA noncompliance, suffers an injury sufficient to convey standing. *Betancourt*, 735 F. Supp. 2d at 602.[53]

In *Betancourt*,[54] the Western District of Texas concluded that a plaintiff need not engage in the "futile gesture" of delineating when she planned to return to a shopping

---

[52] 2019 WL 296860 (E.D. La. Jan. 23, 2019).
[53] *Id.* at * 4 (footnotes omitted).
[54] 735 F. Supp. 2d 587 (W.D. Tex. 2010).
Document Number: 59895

mall that was not compliant with the ADA because she suffered an imminent injury.[55] Specifically, the court found that the plaintiff was deterred from frequenting the business due to her actual knowledge of the shopping mall's noncompliance with the ADA.[56] In *Tatum v. Board of Supervisors for the University System of Louisiana*,[57] the district court held that "plaintiffs may demonstrate an injury in fact if they are unable to visit a particular place or participate in a particular activity in the future, and they have done so in the past."[58]

Denying Ochsner's motion to dismiss, the *Smith*[59] court held:

> Here, the critical issue is whether Plaintiff has suffered an injury in fact that is sufficient to convey standing. It is clear that Ochsner's alleged conduct caused Plaintiff's injury and a favorable court decision will redress her injury. Taking as true all allegations raised in the complaint and following the reasoning of *Betancourt* and *Tatum*, Plaintiff has standing to seek injunctive and declaratory relief because she has alleged that Ochsner has discriminated against her on the basis of her disability in the past and she has expressed an affirmative intention to visit the hospital again in the future given that her child was born there and she lives in close proximity. For these reasons, Plaintiff has sufficiently pleaded a real and immediate threat of future injury.[60]

Plaintiff relies on the decision of the Eastern District of Louisiana in *Potter v. Ochsner Med. Ctr.*,[61] wherein the court rejected the argument that a disabled plaintiff must

---

[55] *Id.* at 600.
[56] *Id.* (citing *Steger v. Franco*, 228 F.3d 889 (8th Cir. 2000))("[a]lthough plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying ... they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers")).
[57] 9 F.Supp.3d 652 (E.D. La. 2014).
[58] *Id.* at 656 (internal citations omitted).
[59] The Court acknowledges that this matter is on a motion for summary judgment rather than a 12(b)(1) motion to dismiss as in *Smith*; however, as discussed, OLOL does not offer summary judgment evidence controverting the factual allegations in Plaintiff's *Complaint* or *Affidavit*. Thus, the Court finds that the reasoning of *Smith* is instructive here.
[60] *Smith*, 2019 WL 296860 at *5.
[61] 2019 WL 1428503.

demonstrate concrete plans to return to a medical facility to establish standing for injunctive relief. In *Potter*, the married plaintiffs were both been profoundly deaf since birth and they used ASL as their native language and primary means of communication. Although Melisa Potter had limited proficiency in lip-reading and could use her voice when necessary, Gary Potter could do neither. Both plaintiffs had a limited ability to read and write in English.[62]

Melisa Potter was admitted to Ochsner for a gastric bypass procedure to be performed by a bariatric surgeon who practices at Ochsner in Kenner, Louisiana. Melisa Potter requested an ASL interpreter be present from her admission to the end of her hospital stay to facilitate communication between the hospital staff and the plaintiffs. Ochsner provided an ASL interpreter for Melisa Potter's pre-admission check-in process from 10:30 a.m. until 3:00 p.m. that day. However, the plaintiffs alleged that Ochsner did not provide any more ASL interpreters during the remainder of Melisa Potter's three-day hospital stay or for her discharge instructions.[63]

The plaintiffs sued Ochsner, alleging that it discriminated against them by failing to provide a reasonable accommodation in the form of an ASL interpreter. The plaintiffs asserted claims under the ADA, RA, and the ACA. The plaintiffs sought damages and injunctive relief prohibiting Ochsner from discriminating against them in the future and declaratory relief stating that Ochsner's policies, procedures, and practices subjected Plaintiffs to unlawful discrimination. Ochsner moved to dismiss the plaintiffs' claim for injunctive relief arguing they lacked standing.

---

[62] *Id.* at *1.
[63] *Id.*

Document Number: 59895

The court noted that the plaintiffs alleged that Melisa Potter would seek Ochsner's healthcare services in the future, whether by choice or necessity, due to her ongoing need for future medical care with her bariatric surgeon, in connection with her gastric bypass procedure and future weight loss medical procedures and treatment. The plaintiffs also alleged that the surgeon is a specialist in bariatric surgery and only practices at Ochsner.[64] Based on these allegations, the court held:

> Although Plaintiffs do not allege a specific date and time of an anticipated future visit to Ochsner, they have alleged enough facts to establish standing for their claims for injunctive and declaratory relief. Plaintiffs have alleged an injury traceable to Ochsner's alleged failure to provide an ASL interpreter, which would be redressed by a favorable decision. Further, they have alleged both that Ochsner discriminated against them in the past based on their disability and that they will visit the hospital again because Dr. Wooldridge is Melisa Potter's treating physician for bariatric issues and he practices solely at Ochsner. *See Smith v. Ocshner Med. Ctr.-Westbank, L.L.C.*, 2019 WL 296860, *4-5 (E.D. La. Jan. 23, 2019); *see also Naiman v. New York Univ.*, 1997 WL 249970, at *5 n.4 (S.D.N.Y. May 13, 1997) (standing is established if a plaintiff can allege that he or she suffers from a recurring medical condition that would cause him or her to seek the particular hospital's services, as opposed to those of some other hospital). Given the likelihood that Melisa Potter will be seeking treatment from Dr. Wooldridge at Ochsner, and that Gary Potter will accompany his wife and need to speak with doctors and other medical personnel, Plaintiffs have standing to pursue injunctive and declaratory relief.[65]

In *Perez v. Doctor's Hosp. at Renaissance, Ltd.*,[66] deaf and hearing-impaired parents of an infant who had been diagnosed with cancer sued the hospital they visited for failing to provide them with appropriate auxiliary communication aids. The parents sought both compensatory damages and injunctive relief under the RA and the ADA, as well as pursuant to state law. The United States District Court for the Southern District of

---

[64] *Id.*
[65] *Id.* at *2.
[66] 624 Fed.Appx. 180 (5th Cir. 2015).
Document Number: 59895

Texas granted the hospital's motion for summary judgment, and the parents appealed to the Fifth Circuit.[67]

The Fifth Circuit explained the standard for standing:

> Standing to seek injunctive relief requires plaintiffs to show that they suffer or will suffer an injury-in-fact, and therefore would benefit from the court's granting of such equitable relief. *Id.* Plaintiffs must demonstrate that they face a palpable present or future harm, not harm that is "conjectural or hypothetical." *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 n. 23 (5th Cir.1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Allegations of "past wrongs" alone do not "amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 563 (quoting *Lyons*, 461 U.S. at 103, 103 S.Ct. 1660) (alteration omitted). Past wrongs can be considered, however, as evidence of an actual threat of repeated injury. *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir.1992) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).[68]

The Fifth Circuit reversed the lower court's grant of summary judgment to the hospital, finding that there was a genuine dispute of material fact on the question of the plaintiffs' standing to seek injunctive relief.[69] The court noted that the plaintiffs offered evidence of DHR's "repeated and recent failures to provide effective communication through auxiliary aids or reasonably accommodate the Perez family's hearing disabilities," and the affidavit of Mr. Perez wherein he swore that, during his family's visits to DHR in the three-month period prior to the court's summary judgment ruling, they encountered: (1) VRI machines that did not always work properly; (2) a nurse who did not know how to use the VRI machine; and (3) two nurses who "did not know what 'VRI' was." Mr. Perez also attested that he always "prefer[s] an in-person interpreter, but DHR does not always

---

[67] *Id.*
[68] *Id.* at 183.
[69] *Id.* at 184.
Document Number: 59895

have one available, even after we have requested it."[70]  Also in evidence were Mr. Perez's handwritten notes describing the family's visits to DHR, which indicated that an interpreter was requested and not provided as late as April 2012.[71]

Considering the foregoing jurisprudence, the Court finds that the evidence in the present case is sufficient to demonstrate at least a fact dispute regarding Plaintiff's standing to seek injunctive relief.  OLOL argues that, while it does not admit to the truthfulness of Plaintiff's allegations, even accepting Plaintiff's allegations as true, such claims are conclusory and speculative and fail to demonstrate standing.  Applying the analysis and reasoning of the cases discussed above, the Court disagrees.  Via an affidavit, Plaintiff has submitted sworn testimony that she still has ongoing heart issues, including a heart murmur;[72]  she has been trying to set up an appointment with Dr. Bringaze to address her heart murmur but has not yet scheduled an appointment;[73]  and Dr. Bringaze's office is located next to OLOL, where he has admitting privileges.[74]  Although Plaintiff admittedly cannot predict when she will require medical treatment at OLOL through another provider or for an emergency, she is 72 years old and suffers from numerous medical conditions, including diabetes, hypertension, breast cancer, diverticulosis, and chronic kidney disease.[75]  As OLOL is located only fifteen (15) miles from her house,[76] Plaintiff contends it is not speculative that she will seek medical

---

[70] *Id.* at 183.
[71] *Id.*
[72] Rec. Doc. No. 56-2, ¶ 6.
[73] *Id.*
[74] *Id.* at ¶ 7; *see also* https://ololrmc.com/provider/walter-l-bringaze-iii-md-cardiothoracicsurgery (last visited Nov. 1, 2019).
[75] *Id.* at ¶ 8.
[76] *Id.* at ¶ 9.

treatment at OLOL again in the future.  Given the uncontroverted evidence that Plaintiff visited OLOL on multiple occasions in 2017 for heart valve replacement surgery and subsequent complications from surgery,[77] and Plaintiff's age and variety of health conditions, the Court finds that it is not speculative but, rather, likely that she will again seek treatment at OLOL.  Therefore, the Court finds that Plaintiff has presented summary judgment evidence demonstrating disputed fact issues regarding her standing to seek injunctive relief under the RA.  Should Plaintiff carry her burden at trial and demonstrate that she is entitled to injunctive relief, the Court will determine the appropriate relief based on the evidence admitted at trial.  OLOL's *Motion for Summary Judgment* on Plaintiff's claim for injunctive relief is DENIED.

### III. CONCLUSION

For the reasons set forth above, OLOL's *Motion for Summary Judgment*[78] is GRANTED in part and DENIED in part.  Plaintiff's compensatory damage claims are dismissed with prejudice.  OLOL's motion is denied regarding Plaintiff's claim for nominal damages and attorney's fees, which may be addressed after completion of the trial if warranted, and denied as to Plaintiff's claim for injunctive relief.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 17th day of April, 2020.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[77] *Id.* at ¶ 5.
[78] Rec. Doc. No. 42.

Document Number: 59895